## WM. T. WILLIAMS *v.* THE STATE.

1. LEGISLATIVE JOURNALS. The mere fact that, in the transmission of a bill from the Senate, where an amendment thereto was made, to the lower House where it originated, a mistake was made by changing its original number "50" to 58, will not vitiate the bill, it appearing from the journal of the House that it was the same bill.

2. CONSTITUTIONAL LAW. *Legislative journals.* When the journal of the House fails to show *affirmatively* that the bill received on its third reading a constitutional majority, *held*, that the Constitution of Tennessee does not require that the ayes and noes shall appear on the journal, or that it shall affirmatively appear that the bill received the constitutional majority, and the court will presume that it was regularly passed, especially when it can be seen that the speaker signed it in open session, and that fact was announced and entered upon the journal.

---

### FROM GILES.

---

Appeal in error from the Circuit Court of Giles county.    W. S. McLEMORE, J.

E. T. TALIAFERRO for Williams.

ATTORNEY-GENERAL LEA for the State.

McFARLAND, J., delivered the opinion of the court.

This is a conviction for horse stealing, in the county of Giles. The only question made for a reversal is upon the venue, which depends upon the validity of chapter 21 of the Acts of 1879, changing the lines between the counties of Giles and Marshall. The proof tends to show that the animal was stolen from

that part of the premises of D. W. Kincaid, the prosecutor, which, by the act referred to, was transferred from Marshall to Giles county, so that, if the act be valid, the prosecution was in the proper county, but if not valid, the territory still remained part of Marshall county, and the proof would fail to sustain the conviction in Giles.

It is argued here, as it was below, that the act was not passed by the General Assembly in the mode pointed out by sec. 18, art. 2, of the Constitution, in these words: "No bill shall become a law until it shall have been read and passed on three different days in each house, and shall have received, on its final passage, the assent of a majority of all the members to which that house shall be entitled under this Constitution, and shall have been signed by the respective speakers in open session, the fact of such signing to be noted on the journal, and shall have been approved by the Governor," etc.

The objections are—1st. That the bill is not shown to have received the constitutional majority on its third reading in the House of Representatives. 2d. That the bill was amended in the Senate and was not returned to the House, where it originated, for action on the amendment, nor did the House take action on the amendment. 3d. That the journals do not note the signing of the bill by the respective speakers in open session.

The learned counsel for the prisoner, in his examination and citation of the printed journals, has been misled by some confusion in the numbering of the

bills, and in one instance, by a discrepancy between the printed journal and the original. After a careful examination, we find the facts to be as follows: The bill was introduced into the House of Representatives, and designated as House Bill No. 50, to change the county lines between Giles and Marshall. The journal shows that it passed its three readings on three different days in that body, the entry as to the third reading being in these words: "House Bill No. 50, to change county lines between Giles and Marshall counties, passed third reading, the author waiving call of the roll." The bill was then transferred to the Senate, and the journal of that body shows that it passed its first and second readings on different days, and, on the 14th of February, was amended in a material respect, and, as amended, passed its third reading by the constitutional majority. The journal of the House shows that on the same day the clerk of the Senate returned to the House, among other bills, "House Bill No. '58,' *to change the county lines between Giles and Marshall counties, amended and passed by the Senate.*"

Although designated as House Bill No. 58, it was beyond doubt the bill in question, *as its title shows.* House Bill No. 58 proper was not to change the county lines between Giles and Marshall counties, but upon a wholly different subject, and there was no other House bill for the purpose of changing the lines between the two counties of Giles and Marshall that had passed and been amended in the Senate.

On the same day this same bill, designated as

House Bill No. 58, was taken up, and the Senate amendment non-concurred in upon a call of the ayes and noes.

On the next day, on motion of the member from Marshall, the vote rejecting the amendment to House Bill No. "58" was reconsidered, and the amendments concurred in.

In both these entries from the journal the bill is designated as House Bill No. 58. There is no doubt that it was the bill in question, and the mistake was made by simply following the first error in the entry showing the return of the bill from the Senate, in which it was designated as No. "58." It is certain that it was not House Bill No. 58 proper, as that bill had not been passed and amended in the Senate. Nor do we find any other bill in that category to which these entries could apply.

This becomes more apparent, when we find on the journal of the 17th that the committee on enrolled bills reported that House Joint Resolution No. 113, * * House Bills Nos. "50" (the one in question), 62 and 71 had been compared and found correct, and all presented for the signature of the speaker; and on the same day, according to the printed journal, the speaker announced that he had signed House Bills Nos. "60," 62, 71, and House Joint Resolution No. 113. We find from the original journal that it was House Bill No. 50, instead of No. "60," and in this last entry the error is in the printed journal. The journal of the Senate shows that on the same day the speaker of the Senate announced that he had offi-

cially signed these three bills and the resolution. In this entry it is properly designated as House Bill No. 50. The bill was subsequently approved by the Governor, and his message to that effect returned to the House.

From these facts, we are of opinion that the principal objections taken to the bill do not exist in fact;—that the bill was passed, the amendment of the Senate concurred in by the House, the bill signed by both speakers in open session, and the fact noted upon the journals. Notwithstanding the confusion in the numbers, we think these facts do sufficiently appear.

The only question, therefore, that is raised by these facts is, whether the failure of the journal of the House to show affirmatively that the bill received on its third reading the constitutional majority, is fatal. The rule is, that the journals may be looked to in order to determine whether the bill was in fact passed, but every reasonable presumption must be made in favor of the action of a legislative body acting in the apparent performance of its legal functions. The courts will not presume, from the mere silence of the journals, that the House had disregarded the constitutional requirements, *unless where the Constitution expressly requires the fact to appear on the journals:* Cooley Com., secs. 135, 136.

Our Constitution does not require that the ayes and noes shall appear on the journal, or that it shall affirmatively appear that the bill received the constitutional majority. We will not, therefore, presume that this bill was declared *passed,* when in fact it was

not, especially when we see that it was afterwards signed by the speakers in open session, and the fact announced and entered upon the journals.

We hold the law to have been constitutionally passed, and the judgment will be affirmed.